## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTONIO WATSON, et. al.

          :   No. 01-CV-5501
          :

      v.     :   JURY TRIAL DEMANDED
          :

ABINGTON TOWNSHIP, et. al.  :

FILED

NOV [ ] 2007

MICHA[ ]
BY[ ]

**PLAINTIFFS GERALD KELLY, JUST JERRY'S INC. t/a and d/b/a SCOREBOARD RESTAURANT & TAVERNS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Gerald Kelly, Just Jerry's Inc. t/a and d/b/a Scoreboard Restaurant & Tavern, by and through their attorney, D. Louis Nicholson, Esquire, move for summary judgment and in support thereof avers the following:

1.   Plaintiffs Gerald Kelly, Just Jerry's Inc. .t/a and d/b/a Scoreboard Restaurant & Tavern, aver that the Defendants violated their Fourth Amendment rights by conducting warrantless searches and seizures (also referred to as sweeps) of the Scoreboard Restaurant & Tavern in violation of Section 2-211 of the Pennsylvania's Liquor Code and the Pa. Superior Court decision of <u>Commonwealth v. Black,</u> 530 A.2d 423 (Pa. Super. Ct. 1987) and thereby caused them grievous damages. See his Complaint attached hereto as Exhibit A.

2.   At all times pertinent to Plaintiffs' complaint, Defendants conducted warrantless searches and seizures (also referred to as sweeps) of the Scoreboard Restaurant & Tavern looking for underage drinkers without the express authority of the hierarchy of Pennsylvania Liquor Control Board (hereinafter referred to as PLCB) or the hierarchy of its enforcement agency, the Bureau of Liquor Control Enforcement (hereinafter referred to as the " BLCE"). This express authority

is required by Sections 2-211, 4-493(21) and 5-513 of the Pennsylvania Liquor Code and the Pa. Superior Court decision of Commonwealth v. Black, 530 A.2d 423 (Pa. Super. Ct. 1987) .

3.    The Pa. Liquor Code prohibits municipal police officers from entering either private or public establishments for purposes of checking for underage drinkers without the express authority of the hierarchy of the PLCB.  Pa. Liquor Code, Sections 2-211, 4-493(21) & 5-513; Commonwealth v. Black, supra.

4.    The Pennsylvania Superior Court in Commonwealth v. Black, *supra*, held that a municipal police department's sweep of a liquor serving establishment without the authority of the hierarchy of the PLCB is a violation of the establishment's Fourth Amendment rights.

5.    The fact that the municipal police department is accompanied by  an agent of the PLCB does not fulfill the requirement that the PLCB give authority to the police. Black, 530 A.2d at 430.  It must be shown that the agent's superiors specifically granted the authority. Id. at 429-430.

6.    In 2003, the Defendants subpoenaed all the PLCB and BLCE  records pertaining to  the Scoreboard Bar and Tavern when owned and operated by Plaintiffs. See said records attached hereto as Exhibit B.   Major John Lutz, the Director of the BLCE  testified at his deposition that there is no evidence in those records that either the PLCB or BLCE authorized the Abington Police Department to enter the Scoreboard to search for underage drinkers. See his deposition attached hereto as Exhibit C. He knows of no instances in which either the PLCB or the BLCE authorized any municipal police departments, including Abington Township,  to search businesses for underage drinking. Id. at. 15,17. Nor can he think of any scenarios in which either the PLCB or the BLCE would give any such authority. Id.   In fact he is not sure whether any such authority could even be given. Id. At 16.

7.    Defendants' defense is that they acted pursuant to a grant from a Pennsylvania Commission on Crime and Delinquency and therefore did not violate Plaintiffs' fourth Amendment rights. This is utterly without merit for the following reasons.  First, the record is devoid of anything other than an application for such a grant and there is no evidence that said application was approved. Second, and most importantly, assuming arguendo that the grant was actually approved, the grant could not lawfully supercede or contradict  the Pa. Liquor Code or the Pa. Superior Court's decision in Commonwealth v. Black, 530 A.2d 423 (Pa. Super. Ct. 1987).   Furthermore, Defendant Abington Police Chief William Kelly, as the Applicant of the grant,  signed the grant's Standard Subgrant Conditions document which states in paragraph w:

> Other Laws and Regulations - The Applicant understands that it is not relieved of or  released from the requirements of any other federal, state or local laws or regulations by virtue of its compliance with the standard and special conditions contained in this application.

See Pennsylvania Commission on Crime and Delinquency Application, attached hereto as Exhibit D, Standard Subgrant Conditions document age 19, paragraph w, (at back of Application marked with paper clip).  Accordingly, the alleged grant's own language clearly states that the grant does not relieve the Defendants from the requirements of the Pa. Liquor Code. Defendant Kelly's signature on that document proves he was aware of that provision.

8.    Defendant Chief William Kelly admitted at his deposition that he was present at the first sweep of the Scoreboard Restaurant and Tavern. Accordingly he is liable not only as the decision maker in this action but a personal participant.  See his deposition attached hereto as Exhibit E,. page 100.

9.    Plaintiffs have established that both Defendants Abington Township and Chief William Kelly are liable pursuant to Monell v. Department of Social Services,  436 U.S 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) .

10.   None of the Defendants are entitled to qualified immunity.

WHEREFORE, the Plaintiffs pray that this Honorable Court find in their favor and against Defendants and enter an Order declaring that Defendants are liable as a matter of law to Plaintiffs on their Fourth Amendment Claim and that Defendants are precluded from introducing, asserting or arguing any defense to that claim at trial.

Respectfully submitted,

Date: November 9, 2007

__LN1528_____
D. Louis Nicholson, Esquire
Attorney I.D. No. 47261
Two Penn Center Plaza
1500 JFK Blvd.
Philadelphia, PA 19102
215-854-4061
Fax: 215-754-4695
DLNLAWW@AOL.COM
Attorney for Plaintiffs Gerald Kelly, Just Jerry's Inc. .t/a and d/b/a Scoreboard Restaurant & Tavern

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTONIO WATSON, et. al.　　　　:
　　　　　　　　　　　　　　　　:　　No. 01-CV-5501
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:　　JURY TRIAL DEMANDED
　　　　　　　　　　　　　　　　:
ABINGTON TOWNSHIP, et. al.　　:
　　　　　　　　　　　　　　　　:



### CERTIFICATE OF SERVICE

I, D. Louis Nicholson, Esquire certify that a true and correct copy of Plaintiffs' Motion for Summary Judgment was electronically and hand filed with the Court on November 9, 2007 and is available for viewing and downloading from the ECF System.

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

Date: November 9, 2007

　　　　　　　　　　　　　　　　　　　　_LN1528_____
　　　　　　　　　　　　　　　　　　　　D. Louis Nicholson, Esquire
　　　　　　　　　　　　　　　　　　　　Attorney I.D. No. 47261
　　　　　　　　　　　　　　　　　　　　Two Penn Center Plaza
　　　　　　　　　　　　　　　　　　　　1500 JFK Blvd.
　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19102
　　　　　　　　　　　　　　　　　　　　215-854-4061
　　　　　　　　　　　　　　　　　　　　Fax: 215-754-4695
　　　　　　　　　　　　　　　　　　　　DLNLAWW@AOL.COM
　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs Gerald Kelly, Just
　　　　　　　　　　　　　　　　　　　　Jerry's Inc. .t/a and d/b/a Scoreboard
　　　　　　　　　　　　　　　　　　　　Restaurant & Tavern

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |  |
|---|---|---|---|
| ANTONIO WATSON, et. al. | : | No. 01-CV-5501 | **FILED** |
|  | : |  |  |
| v. | : | JURY TRIAL DEMANDED | NUV 09 2007 |
|  | : |  | **MICHAEL E. KUNZ, Clerk** |
| ABINGTON TOWNSHIP, et. al. | : |  | **By_____Dep. Clerk** |
|  | : |  |  |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS GERALD KELLY, JUST JERRY'S INC. t/a and d/b/a SCOREBOARD
RESTAURANT & TAVERNS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Gerald Kelly, Just Jerry's Inc. t/a and d/b/a Scoreboard Restaurant & Tavern, by and through their attorney, D. Louis Nicholson, Esquire move for summary judgment and in support avers the following:

I.    **Background Facts**

A.    **Procedural History Relating to Plaintiff's Fourth Amendment Claims**

On October 21, 2001, the Plaintiff filed a complaint against Abington Township, the Abington Township Police Department, Abington Township Police Chief, William J. Kelly and three individual officers. See copy of Civil Complaint attached hereto as Exhibit A.    Among other claims not relevant to this action at this time, Plaintiffs brought claims under 42 U.S.C. Section 1983 for violations of their Fourth Amendment rights.   In response, the Defendants filed a motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6).   On February 20, 2002, this Court granted the Defendants' motion to dismiss as to the Plaintiffs' Fourth Amendment claim.   This Court also denied the Plaintiff's motion for reconsideration of that dismissal on March 31, 2003.   On September 30, 2004, the Defendants filed a motion for

summary judgment as to all the Plaintiff's remaining claims.  On August 5, 2005, this Court

granted the motion for summary judgment. On September 6, 2005, the Plaintiffs filed a Notice of

Appeal with the Third Circuit Court of Appeals..  On February 16, 2007, the Third Circuit

reversed this Court's dismissal of the Plaintiffs' Fourth Amendment claim.  On July 11, 2007,

this Court held a Case Management Conference and ruled that the parties could conduct further

discovery on the Fourth Amendment claims.  On November 8, 2007, the Defendant's filed a

motion for summary judgment. On November 9, 2007, the Plaintiffs' filed this motion for

summary judgment.


**B.      Facts Relating to Plaintiffs' Fourth Amendment Claim**

The Third Circuit in reviewing this case, summarized the facts of this case as follows:

> In 1993, Gerald Kelly retired from the Abington Township Police Department
> as a lieutenant, after twenty-eight years on the force.  Upon his retirement, Kelly
> purchased the Scoreboard Restaurant and Tavern ("Scoreboard"), and set it up
> under the corporate entity Just Jerry's Inc.  Kelly and his wife also purchased the
> property won which the restaurant was located, but did so under their own names.
>
> On August 10, 1998, Kelly leased a storefront adjacent to the Scoreboard to
> Antonio Watson, an African-American who was an original plaintiff in this case.[1]
> Watson used the property to operate a ticket agency to operate a ticket agency
> named Tony Tix, Inc. Tony Tix remained open from October 1998 to February
> 2000, and was reportedly very successful during this time.
>
> Shortly after Tony Tix, opened, Lieutenants Peter Hasson and George
> Magalish of the Abington Township Police Department ...spoke to Kelly about
> Watson.(footnote omitted). They asked about his background and his business.
> During their discussion, Kelly mentioned his plans to sell the Scoreboard to
> Watson. Kelly testified that upon learning of these plans, Lt. Hasson....said"[we
> heard you're...selling the bar to [Watson].  And [Kelly] said, [w]ell, we can raid
> you out of business and you can but it back cheap and then he just laughed."

---

[1] Watson died on December 25, 2004.

2

...although Kelly never sold the bar to Watson, the police did precisely what Lt. Hasson suggested they would do: raid him out of business based on his association with Watson. On May 20, 1999; December 18, 1999, August 3, 2000; and November 25, 2000,[2] the Abington Township Police Department conducted w\sweeps of the Scoreboard. During these raids, between five and fifteen uniformed officers would enter the bar. One officer would secure the door, while others would walk around and check the identification of the bar's patrons. The officer at the door prevented anyone from entering or leaving until the sweep was complete.

The Defendants claims that the sweeps began in 1999, and were funded by the Commonwealth of Pennsylvania [ Commission on Crime and Delinquency]. However, Lt. Hasson testified that on May 20, 1999, no one from either the Liquor Control Board or the enforcement bureau accompanied the officers in their search of the Scoreboard. According to his testimony, an agent from the enforcement bureau [named Karen Hearns] did accompany the officers during the December 18 and August 3, sweeps.

...beginning in 1998,the Defendants would often station a marked police vehicle in the parking lot directly across the street from the Scoreboard. On one occasion in either 1998 or 1999, the Defendants set up a Driving Under the Influence ("DUI") checkpoint directly in front of the Scoreboard. During this checkpoint, floodlights illuminated the bar.

The Plaintiff's presented sworn affidavits from several individuals who were familiar with the Abington Township Police Department's activities at the Scoreboard. Eugene Chapman was frequent patron of the Scoreboard, who lived behind the establishment. According to his affidavit, he was followed on several occasions for no legitimate reason by Township police when he drove from behind the Scoreboard. He has been stopped seven times by the Department, but has never received a ticket of citation. Chapman also stated that he was present for a raid of the Scoreboard, during which the officers made all of the customers lie on the floor. In addition, he saw the Department set up highly visible DUI checkpoints very close to the Scoreboard every other weekend. In 2003, he was harassed while parked in a public park by officers who said they had a call that "a strange man was in his car in the park watching television."

[Floor manager James Barry, in his affidavit averred that during the at least seven raids he observed, African-American customers were harassed more than Caucasian ones.] ....Officers   were also stopping Scoreboard patrons for no apparent reason after they left the bar. This happened to African-American

---

[2]James Barry, a floor manager for the Scoreboard, averred in his affidavit that he was present on at least <u>seven</u> occasions when Abington police raided the business.

customers more frequently than to Caucasian patrons.  In addition, a marked
police car was parked across the street from the Scoreboard every night, and this
car was visible to customers. According to Barry, these actions destroyed the
Scoreboard's business.

Robert Kennedy, an employee of the Scoreboard, submitted an affidavit
claiming that he observed a uniformed, African-American female officer harass a
black customer.  On one occasion, Kennedy witnessed the Department set up a
DUI checkpoint immediately outside the Scoreboard's parking lot.

Watson v. Abington Township, 478 F. 3d. 144-149 (3rd. Cir. 2007).

After this matter was remanded to this Court,  Major John Lutz was deposed concerning
whether either the Pennsylvania Liquor Control Board (hereinafter referred to as PLCB) or the
Bureau of Liquor Control Enforcement (hereinafter referred to as the " BLCE")  authorized
Defendants to conduct sweeps of the Plaintiff's establishment.  See his deposition testimony
attached as Exhibit C..  He is the current Director of the BLCE. Id. at p. 8.  He has held that
position since July 2006. Id. At 13. Prior to that he was a State Trooper for almost 30 years. Id. At
23. The BLCE is the enforcement arm of the PLCB. Id at 9.   His agents are authorized by the
PLCB to conduct sweeps in liquor serving establishments to look for underage drinkers. Id. 9-10.
His agents normally do not wear uniforms for that role. Id. At 11-12.  He knows of no instances in
which either the PLCB or the BLCE ever authorized any municipal police departments, including
Abington Township,  to search businesses for underage drinking. Id. at. 1,17.5.  Nor can he think
of any scenarios in which either the PLCB or the BLCE would ever give any such authority. Id.
In fact he is not sure whether any such authority could even be given. Id. At 16.  He knows of no
PLCB or BLCE documents which pertain to procedures that must be followed if  either of these
agencies authorize municipal police departments to search businesses for underage drinkers. Id.
At 16-17.   In 2003, the Defendants subpoenaed all the existing PLCB and BLCE records which
pertained to underage drinking sweeps and Liquor Code violations at the Scoreboard Bar and

4

Tavern while it was owned and operated by Plaintiffs.  See Exhibit B.  He testified that there is no evidence in those records that either the PLCB or BLCE authorized the Abington Police Department to enter the Scoreboard to search for underage drinkers at any time. Id. At 17.

## II.   Standard for Summary Judgment

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56 ( c) .  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material if it might affect the outcome of the case under the governing substantive law." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

## III..   There is No Genuine Issue of Material Fact that Defendants Violated Plaintiffs' Fourth Amendment Claim

### A.   The Pennsylvania Liquor Control Code prohibits Municipal Police Officers from conducting sweeps for underage drinking in any liquor establishment unless the Pennsylvania Liquor Control Board's hierarchy specifically authorizes said Municipal Police Officers to do so.

In its opinion reversing this Court's 12(b)(6) dismissal of Plaintiffs' Fourth Amendment claim, the Third Circuit stated the following which Plaintiffs incorporate by reference:

> The next question before us, then, is whether the regulatory scheme at issue here authorized local police officers to carry out warrantless searches of businesses that sold liquor.  If not, the Plaintiffs have alleged a possible Fourth Amendment violation by claiming that Abington Township police officers-and not members of the PLCB-searched the Scoreboard without a warrant.  To make this determination, we turn to the relevant Pennsylvania statutory and case law.  Section 2-211 of Pennsylvania's Liquor Code provides, in relevant part, as follows:

5

or of the rules and regulations of the board promulgated under the authority of this act, or (b) for the purpose of ascertaining the correctness of the records required by this act to be kept by licensees and the books and records of licensees, and the books and records of their customers, in so far as they relate to purchases from said licensees, shall at all times be open to inspection by the members of the board or by persons duly authorized and designated by the board for the purpose of making inspections as authorized by this section.    Members of the board and the persons duly authorized and designated by the board shall have the right, without fee or hindrance, to enter any place which is subject to inspection hereunder, or any place where records subject to inspection hereunder are kept, for the purpose of making such inspections.

47 Pa. Stat. Ann. Section 4-493(21). Thus, we must consider whether these provisions authorized the warrantless searches of the Scoreboard by Abington Township police officers.

Faced with a similar question, the Pennsylvania Superior Court determined in *Commonwealth v. Black*, 530 A. 2d 423 (Pa. Super. Ct. 1987), that these regulations did not authorize the warrantless entry and search of a licensed premises by a police officer, *even if that officer was accompanied by an agent from PLCB* [emphasis added].

In *Black* the PLCB was investigating the Second Story Lounge, a private club in Reading, Pennsylvania. The Lounge was a licensee of the PLCB, and was therefore subject to the above statutory provisions of the Liquor Code. An agent of the PLCB contacted local police and requested that an officer accompany him on a search of the club. *Id.* At 425-26. Pursuant to this request, an officer from the police department accompanied several PLCB investigators on a warrantless search of the Lounge. *Id.* During the search, the officer discovered the drugs which served as the basis for the criminal charges brought against Black. *Id.*

After considering the provisions noted above, the Superior Court determined that they did not authorize the officer's warrantless search of the premises. The court first noted that "[t]he statute specifies those categories of individuals who have been entrusted to enforce liquor laws by conducting special searches and inspections, i.e. enforcement officers, investigators, members of the board, and persons duly authorized by the board.: *Id* at 429-30. Thus, "[i]n the absence of any evidence of record as to whether the [the agent's] request was documented or approved by his superiors, we surely cannot regard the invitation extended to [the officer] as a form of due authorization to inspect within the meaning of the statute." *Id.* The court then noted that, viewing Sections 5-513 and 4-493(21) in conjunction,

7

"person duly authorized and designated by the board" under Section 5-513 were intended to be "authorized employes" of the board who are under the direct supervision of board members, as per Section 4-493(21). *Id.* The court therefore held that the Pennsylvania Liquor Code does not authorize warrantless searches of licensees by municipal police officers. *Id.*

As noted above, " the regulated industries exception is a narrow one, and ...a warrantless search can be place within that exception only if it is in fact made pursuant to and in enforcement of the regulatory scheme." *Shaefer, Michael & Clairton Slag, Inc.* 637 F.2d at 204. The regulatory scheme at issue here only permits warrantless inspection by specified categories of individuals, and the officers of the Abington Township Police Department are not among those individuals-especially absent evidence that they were authorized by the PLCB. 47 Pa. State. Ann. Section 5-513; Black, 530 A.2d. At 430.

<u>Watson v. Abington Township</u>, 478 F. 3d. 153-155 (3rd. Cir. 2007).

In this case, it is crystal clear that Defendants did not have any authority from either the PLCB or the BLCE. Major John Lutz, the Director of the BLCE, knows of no instances in which either the PLCB or the BLCE has ever authorized any municipal police departments, including Abington Township police department, to search businesses for underage drinking. Exhibit B. at. 15,17. Nor can he think of any scenarios in which either the PLCB or the BLCE would give any such authority. Id. In fact he is not sure whether any such authority could ever be given. Id. At 16. He knows of no PLCB or BLCE documents which outline procedures that must be followed when either of these agencies authorizes municipal police departments to search businesses for underage drinkers. Id. At 16-17. In 2003, the Defendants subpoenaed all the existing PLCB and BLCE records which pertained to underage drinking sweeps and Liquor Code violations at the Scoreboard Bar and Tavern while it was owned and operated by Plaintiffs. See Exhibit B. He testified that there is no evidence in those records that either the PLCB or BLCE authorized the Abington Police Department to enter the Scoreboard to search for underage drinkers at any time. Id. At 17.

8

The fact that BLCE agent Karen Hearn was present during some of the sweeps is of no moment. As <u>Black</u> clearly states, even in cases in which an BLCE agent is present during the sweep, the municipal police department must have been authorized by the agents supervisors. In this case, there is no evidence that this occurred.. Also, there are at least two instances in which the Defendants admit that neither Agent Hearns nor any other PLCB or BLCE agent were even present during sweeps . Chief Kelly testified that he was present during one of the first sweeps. Exhibit E at 100. At the time he was present, he was positive that no one from either the State Police or the Pa. Liquor Control Bard was present. Id. At 103. Lt. Hasson testified that no PLCB or BLCE agent was present during the sweep of the Scoreboard on May 20, 1999. See his deposition testimony attached at Exhibit F, pp. 60-61.

Lastly, the fact that the Plaintiffs' establishment was a public one rather than a private one is irrelevant. The Pa. Liquor Code applies to both. Section 5-513 of the Code directs that "[e]<u>very</u> place operated under license secured under the provisions of this article where any alcohol, liquor or malt or brewed beverage covered by the license is manufactured, produced, distilled, developed or used in the process of manufacture, denatured, redistilled, rectified, blended, recovered, reused, held in bond, stored for hire or in connection with a licensee's business, shall be subject to inspection <u>by members of the board or by persons duly authorized and designated by the board</u> " It makes no distinction between public and private establishments.

**B.**     **The Pennsylvania Commission Crime and Delinquency Grant, if actually awarded, did not give the Defendants the requisite authority to conduct sweeps of Plaintiffs' business.**

The Defendants maintain that a Pennsylvania Commission on Crime and Delinquency grant existed which allegedly gave them the authority to conduct the sweeps of Plaintiff's business.

9

This argument fails for two reasons.   First, the record is devoid of anything other than an application for such a grant and there is no evidence that said application was approved.   See Pennsylvania Commission on Crime and Delinquency Application, attached hereto as Exhibit D.. Second, and most importantly, assuming arguendo that the grant was actually approved, the grant could not lawfully supercede or contradict   the Pa. Liquor Code or the Pa. Superior Court's decision in Commonwealth v. Black, 530 A.2d 423 (Pa. Super. Ct. 1987).   Furthermore, Defendant Abington Police Chief William J. Kelly, as the Applicant of the grant,  signed the grant's Standard Subgrant Conditions document which states in paragraph w:

> Other Laws and Regulations - The Applicant understands that it is not relieved of or released from the requirements of any other federal, state or local laws or regulations by virtue of its compliance with the standard and special conditions contained in this application.

See Exhibit D; Standard Subgrant Conditions document age 19, paragraph w, (at back of Application marked with paper clip). Accordingly, the alleged grant's own language clearly states that the grant does not relieve the Defendants from the requirements of the Pa. Liquor Code and Defendant Kelly's signature on that document proves he was aware of that provision.


**IV.  There Is No Genuine Issue of Material Fact that Defendants Chief William J. Kelly is liable as a Participant in the Sweeps and that both He and Abington Township are liable to Plaintiffs in their Monell Claim.**

As already stated, Chief Kelly admitted that he participated in one of the sweeps of the Scoreboard. Id. at p.100. Accordingly, he is liable for personally violating the Plaintiff's rights.

Also, The U.S. Supreme Court in Monell v. Department of Social Services,  436 U.S 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) held  that  municipal governments could be liable under Section 1983 for deprivations of federal rights  436 U.S. at 691. The Court also held that  a policy

10

can be created by "those whose edicts or acts may fairly be said to represent official policy." 436 U.S. at 694. A one-time action or decision made on behalf of a governmental entity by a policy-making official will suffice as a policy for purposes of imputed liability under Section 1983. Pembauer v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L. Ed 452 (1986). In Pembauer, the Supreme Court held that a county prosecutor and a sheriff who ordinarily asserted responsibility for decisions in connection with the execution of arrest warrants created municipal liability for authorizing a procedure with violated the Fourth Amendment.

In order to determine whether a particular official is a policy-maker, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3rd. Cir 1990). The Third Circuit, in this instant matter, stated that "[it] is undisputed that Chief Kelly is the relevant decision-maker in this case." Watson, 478 F.2d at 156.

Defendant Chief Kelly testified at his deposition that between 1990 and 2001, he was the top ranking commander of the Abington Township Police Department. See his deposition testimony attached hereto as Exhibit E, p.13. He was the applicant of the alleged Pennsylvania Commission on Crime and Delinquency grant and signed it as such. See Pennsylvania Commission on Crime and Delinquency Application, attached hereto as Exhibit D, Standard Subgrant Conditions document age 20, paragraph w, (at back of Application marked with paper clip). Given that Chief Kelly as the decision-maker in this matter and directed his officers to violate the Plaintiffs' Fourth Amendment rights, Abington Township is equally responsible to Plaintiffs. See Pembauer.

**V.      Defendants Are Not Entitled to Qualified Immunity.**

Governmental officials, including police officers, performing discretionary functions may be protected from civil suits as long as their conduct, "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court stated in Saucier v. Katz, 533 U.S. 194, 201 (2001) that whether an official is entitled to qualified immunity is a two-step inquiry requiring a court to first ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Id., *see generally* Karkut v. Target Corp. 453 F. Supp. 2d 874, 884-86 (E.D. Pa. 2006). If the court finds that no constitutional right would have been violated, that ends the qualified immunity inquiry. However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. Saucier, 533 U.S. at 201.

As the Third Circuit has discussed, there is some disagreement about how to apply the steps outlined in Saucier. *See generally*, Wright v. City of Philadelphia, 409 F.3d 595, 600 (3rd. Cir. 2005). The court observed in Wright that "the dispute is whether the court must determine the issue of whether there has been a constitutional violation before reaching the qualified immunity question, or whether that inquiry is the first part of a two-pronged test for qualified immunity." Id. In Wright, the Third Circuit did not reach the question of which interpretation controls because the only issue before the court was whether the defendant police officers were entitled to qualified immunity. Here, by contrast, the Defendants have argued both that the Plaintiff will be unable to prove her cause of action, and that he is entitled to qualified immunity. Nonetheless, the result is the same. In this matter, the Plaintiffs have established that Defendants violated their Fourth

Amendment rights and that Defendants actions were unreasonable. Therefore no qualified immunity applies.

Defendant Chief Kelly testified that he was aware that the PLCB was the agency charged with making inspections for underage drinking. Exhibit E at 53. Prior to the grant, his department had never conducted any such sweeps for underage drinking Id..  Also, as stated above, Chief Kelly signed the alleged grant's Standard Subgrant Conditions document which indicates that he and his department were not relieved of any federal, state or local laws or regulations by the award of the grant.  Clearly, Chief Kelly as well as Abington Township were aware that the invasion of the Plaintiffs' business without a warrant in these circumstances was unconstitutional and harmful. Accordingly, it was extremely unreasonable for Defendants to conduct such raids, especially in the manner in which they conducted them.  Therefore, they should not be insulated from suit by any qualified immunity.

## VI.    Conclusion

For all the reasons specified above, Plaintiffs request this Honorable Court to grant them Summary Judgment on their Fourth Amendment Claims.

Respectfully submitted,


Date: November 9, 2007

       LN1528

D. Louis Nicholson, Esquire
Attorney I.D. No. 47261
Two Penn Center Plaza
1500 JFK Blvd.
Philadelphia, PA 19102
215-854-4061
Fax: 215-754-4695
DLNLAWW@AOL.COM
Attorney for Plaintiffs Gerald Kelly, Just
Jerry's Inc. .t/a and d/b/a Scoreboard
Restaurant & Tavern

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANTONIO WATSON, et. al.     :
                     :   No. 01-CV-5501
                     :
       v.            :   JURY TRIAL DEMANDED
                     :
ABINGTON TOWNSHIP, et. al.  :

**FILED**

NOV 0 9 2007

MICHAEL E. K____
By_____

**CERTIFICATE OF SERVICE**

I, D. Louis Nicholson, Esquire certify that a true and correct copy of Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment was electronically and hand filed with the Court on November 9, 2007 and is available for viewing and downloading from the ECF System.

Respectfully submitted,

Date: November 9, 2007

<u>LN1528</u>
D. Louis Nicholson, Esquire
Attorney I.D. No. 47261
Two Penn Center Plaza
1500 JFK Blvd.
Philadelphia, PA 19102
215-854-4061
Fax: 215-754-4695
DLNLAWW@AOL.COM
Attorney for Plaintiffs Gerald Kelly, Just
Jerry's Inc. .t/a and d/b/a Scoreboard
Restaurant & Tavern

15