**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTONIO D. WATSON, ET AL.,** | \| | |
| **Plaintiffs,** | \| | |
| | \| | **CIVIL ACTION** |
| | \| | **NO. 01-5501** |
| | \| | |
| **v.** | \| | |
| | \| | |
| **ABINGTON TOWNSHIP, ET AL.,** | \| | |
| **Defendant.** | \| | |

<u>**MEMORANDUM AND ORDER**</u>

**Tucker, J.**                                                                                    **July \_\_\_\_, 2008**

Presently before this Court are Defendants' Motions for Summary Judgment (Docs. 73 & 74), Plaintiffs' Motion for Summary Judgment (Docs. 75 & 76), Defendants' Responses (Docs. 77 & 80) and all accompanying memoranda.   For the reasons set forth below, the Court will grant in part and deny in part the parties' motions.

<u>**PROCEDURAL BACKGROUND**</u>

The parties filed the present cross-motions following an appeal to the Court of Appeals for Third Circuit by Plaintiff Gerald Kelly and his business Just Jerry's, Inc.  Plaintiffs appealed this Court's decision dismissing their claims against Abington Township, The Abington Township Police Department, Police Chief William Kelly[1] and three individual officers under 42 U.S.C. § 1983.  The Circuit Court vacated this Court's dismissal of the Plaintiffs' Fourth Amendment claims and affirmed the summary judgment ruling on the Plaintiffs' Fourteenth Amendment claims.  The Circuit Court held that under the Fourth Amendment, a warrantless search or seizure must be actually

---

[1] Chief William Kelly is of no relation to Plaintiff Gerald Kelly and served as Abington Township's police officer during the period relevant to this case.

carried out in accordance with a regulatory scheme that provides a constitutionally adequate substitute for a warrant. The Third Circuit reviewed the regulations and found that the Abington Police Department does not fall under the special class of officials that are permitted warrantless inspection by the Pennsylvania Liquor Control Board. Viewing the complaint in light most favorable to the Plaintiffs, the Circuit Court held that the investigations were not in accordance with the Pennsylvania's regulatory scheme and this Court erred in finding the Police Department was protected by the closely regulated industry exception to the warrant requirement.

## FACTUAL BACKGROUND

Antonio Watson ("Watson"), an African-American male, owned Tony's Tix, Inc., ("Tony's Tix") a concert ticket-selling agency located in Abington, Pennsylvania. Watson operated Tony's Tix in a space that he leased from Plaintiff Gerald W. Kelly ("Kelly"). Kelly, a retired Abington police officer, also owned Plaintiff Just Jerry's Inc., d/b/a Scoreboard Restaurant & Tavern ("the Scoreboard"). Tony's Tix and the Scoreboard were adjacent to each other. Plaintiffs claim that the Defendants are responsible for harassment and civil rights violations based on a series of events involving the Abington Township Police.

For the purpose of resolving the present motion, the Court need only recite facts related to those incidents leading to the alleged Fourth Amendment violations. Kelly contends that the police conducted underage drinking sweeps in Abington Township in an attempt to harm their businesses. Abington Township funded the sweeps, in part, with money from a grant provided by the Commonwealth of Pennsylvania. A sweep consists of sending several uniformed police officers into a restaurant or tavern to investigate underage drinking in targeted establishments. At times, a sweep would involve the positioning of marked police vehicles outside of the targeted establishment. The

police conducted the sweeps twice a year, pursuant to the terms of the Commonwealth's grant. The dates of the sweeps were May 20, 1999, December 17, 1999, August 3, 2000 and November 16, 2000. The Scoreboard was one of the targets. On May 20, 1999, the police found nine underage drinkers at the Scoreboard; on August 3, 2000, the police found five underage drinkers. During the sweeps, the police targeted twelve different bars in Abington. In July 2001, Plaintiff Kelly closed the Scoreboard. Plaintiff Kelly alleges that the Defendants used the sweeps to harass him because of his social and professional relationship with Watson. According to Kelly, the sweeps violated his Fourth Amendment protection against warrantless searches and seizures.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided

in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

P. 56(e).  That is, summary judgment is appropriate if the non-moving party fails to rebut by making

a factual showing "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[I]f the

opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has

offered a genuine issue of material fact, then the court cannot credit the movant's version of events

against opponent, even if the quality of the movant's evidence far outweighs that of its opponent."

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  Under Rule

56, the Court must view the evidence presented on the motion in the light most favorable to the

opposing party.  Anderson, 477 U.S. at 255.

## DISCUSSION

The Plaintiff moves for summary judgment on its Fourth Amendment claim and, in support

thereof, aver that Defendants violated their Fourth Amendment rights by conducting warrantless

searches and seizures ("sweeps") of the Scoreboard in violation of Section 2-211 of the Pennsylvania

Liquor Code and the Pennsylvania Superior Court decision of Commonwealth v. Black, 530 A.2d

423 (Pa. Super. Ct. 1987).  According to Plaintiff, Defendants sought to identify underage drinkers

without the express authority of the Pennsylvania Liquor Control Board ("PLCB") or its enforcement

agency, the Bureau of the Liquor Control Enforcement ("BCLE").  Plaintiff contends that this

express authority is required  by Sections 2-211, 4-493(21) and 5-513 of the Pennsylvania Liquor

Code and Black.  Defendant Chief Kelly was present at the first sweep of the Scoreboard, and

therefore, Plaintiff contends, the Abington Township is liable pursuant to Monell v. Dep't of Soc.

Serv., 436 U.S. 658 (1978).

4

Defendants' cross motion initially maintains that the Abington Police Department acted pursuant to a grant from the Pennsylvania Commission on Crime and Delinquency at the direction of the BCLE therefore the Officers of Abington Township Police Department were authorized to conduct sweeps at the Scoreboard.  However, Defendant has now abandoned its claim that it acted under the direction of the BLCE and instead claims that it acted pursuant to the Philadelphia Crimes Code.

A.    **Expectation of Privacy**

In remanding this case, the Circuit Court explained that this Court erred in finding that Plaintiffs had not made any allegation upon which relief could be granted.  Specifically, the Circuit Court deemed erroneous this Court's reasoning that no warrant was necessary for a lawful search since Scoreboard was engaged in the sale of liquor, which is a closely regulated industry.  Relying on Black, the Circuit Court ended its analysis by finding that the Plaintiffs had stated a legally sufficient claim regarding the illegality of a regulatory search of the Scoreboard.

Defendants now turn the Courts attention to the initial inquiry in Black.  Before reaching the issue of the regulatory search the Superior Court stated, "[w]e must first consider whether appellant had a legitimate expectation of privacy in the place which was invaded." Id. (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978).  Defendants seek summary judgment on Plaintiffs' claim and contend that Plaintiffs' business was, at all relevant times, a business that was open to the public, and hence open to the police; therefore Plaintiffs had no legitimate expectation of privacy.

Plaintiffs concede that the business was open to the public.  However, according to Plaintiffs, a Fourth Amendment reasonable expectation of privacy analysis does not apply because the officers' conduct constituted a seizure.

"The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides in pertinent part that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  Soldal v. Cook County, 506 U.S. 56, 61 (1992).  "While 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.  A 'seizure' of property, occurs when there is some meaningful interference with an individual's possessory interests in that property."  Id. (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984).  Thus, the Fourth Amendment protects property interests even where no privacy interest is implicated.  Id.  The Court must therefore determine whether Plaintiff Kelly's possessory interest in his property–his business–incurred some meaningful interference.  In Audio Odyssey, Ltd. v. Brenton First Nat'l Bank, officers entered Plaintiffs' business premises, ordered those inside to leave, arranged for the locks to be changed, and erected "No Trespassing" signs, thereby excluding the company's principals from the property.  245 F.3d 721, 736.  The Eighth Circuit Court of Appeals held that "[s]uch an exclusion from one's property, even for a rather brief period, is 'meaningful interference' as a matter of law."  Id.

This reasoning is persuasive.  During the sweeps, between eight and ten uniformed Abington police officers would enter the Scoreboard.  (Dep. Peter C. Hasson pp 23-24, 88-89.)  One officer would secure the door preventing anyone from entering or leaving until the sweep was complete. (Id.) The other officers would walk around the bar and check the identification of the bar's patrons. (Id.)  In light of these facts the officers' actions were certainly a meaningful interference with Plaintiffs' property rights and therefore a seizure.

B.      **Reasonableness Inquiry**

A finding that a seizure has occurred however does not end the Court's inquiry. "'[R]easonableness is still the ultimate standard' under the Fourth Amendment . . . . " Soldal, 506 U.S. at 71 (quoting Camara v. Municipal Court of San Francisco, 387 U.S. 523, 539 (1967)).

A seizure of property that is unsupported by a warrant or other court order is presumptively unreasonable within the meaning of the Fourth Amendment. Audio Odyssey, Ltd., 245 F.3d at 736. The sweeps at issue here were admittedly conducted without a warrant, and therefore, will only fulfill the Fourth Amendment reasonableness requirement if Defendants' actions fall within an established exception to the warrant requirement. Defendant seeks to qualify its conduct under the regulated industries exception. As explained by the Circuit Court, "the regulated industries exception is a narrow one, and . . . a warrantless search [or seizure] can be placed within that exception only if it is in fact made pursuant to and in enforcement of the regulatory scheme." Watson v. Abington, No. 05-4133 (3d. Cir. March 5, 2007).

Initially, Defendants averred that the sweeps were conducted under the auspices of the PLCB. In their filings with this Court and with the Circuit Court, Defendants stated that "any police investigations into illegal or under-aged drinking at the Score Board Restaurant & Tavern *is done at the direction of the Pennsylvania State Liquor Control Board* . . . ." (Def. Mot. Dismiss IV. A.)(emphasis added); see also (Answer ¶ 59 ("check was *conducted by [P]LCB*"))(emphasis added); (Def. Mot. Summ. J. ¶ 20 ("evidence of record, adduced after completing discovery, establishes that the Officers of the Abington Township Police Department were present . . . *at the direction of the Liquor Control Enforcement Unit* . . . .")) (emphasis added). Moreover, as noted by the Circuit

7

Court, this Court acknowledged Defendants' Motion to Dismiss  argument that the searches of the Scoreboard were conducted at the direction the PLCB.

Defendants now attempt  to argue that the minors on the premises were cited under the Pennsylvania Crimes Code not the Liquor Code.  In abandoning its initial assertions that the sweeps were conducted at the direction of the PLCB, Defendants seek to persuade the Court that since the officers acted within their authority under state law, and not under authority granted to the PLCB under the Liquor Code, the Fourth Amendment is not implicated.  Given that Defendants current assertion is completely contradictory to those it made throughout the entire litigation of this matter, Defendants' argument strikes this Court as disingenuous.

Moreover, even assuming that the sweeps were conducted pursuant to authority granted by Title 18 of the Pennsylvania Crimes Code,[2] Defendants' argument fails.  Defendant acknowledges

---

[2] Defendant cites 42 Pa. C.S. §8952 which provides:

Primary Municipal Police Jurisdiction

Any duly employed municipal officer shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office anywhere within his primary jurisdiction as to:

1. Any offense which the officer views or otherwise has probable cause to believe was committed within his jurisdiction;

2. Any other event that occurs within his primary jurisdiction an which reasonably requires action on the part of the police in order to preserve, protect, or defend persons or property or to otherwise maintain the peace and dignity of this Commonwealth.

Defendant states that the citations issued to minors withing Scoreboard were all issued for violation of 18 Pa. C.S. §6308 which provides:

Purchase, consumption, possession, or transportation of liquor or malt or brewed beverages

(a) Offense defined - a person commits a summary offense if he, being less than 21 years of age, attempts to purchase, purchases, consumes, possesses or knowingly and intentionally transports any liquor or malt or brewed beverages as defined in §6310.6 (relating to definitions).  For the purposes of this section, it shall not be defense that the liquor or malt or brewed beverage was consumed in a jurisdiction other than the jurisdiction where the citation for underage drinking was

the Pennsylvania Superior Court holding that, where officers are present for "traditional duties

normally associated with his or her agency," and "had no responsibilities with

 respect to the warrantless inspection of the bar, as that duty was reserved for the LCE personnel,"

their actions are constitutionally permissible.  Commonwealth v. Bennett, 827 A.2d 469 (Pa. Super.

2003).

In Bennett, the BLCE decided to conduct routine administrative inspections in Westmoreland

County as a part of an initiative entitled Bar None Program.  Id.

> The Bar None Program is a multi-agency operation that involved the LCE,
> Pennsylvania State Police, the Westmoreland County Sheriff's Department, the Adult
> Probation and Parole Office in the enforcement of the *Pennsylvania Liquor Code*. 47
> Pa. Stat. Ann. § 1-101, et seq.  The purpose of the program is to inspect the premises
> which operate under a liquor license to determine whether they are in compliance
> with the rules and regulations set forth in the Liquor Code.  See 47 Pa. Stat. Ann. §
> 2-211 "Enforcement," and 47 Pa. Stat. Ann. § 5-513, "Premises and records subject
> to inspection."

Id.

Plaintiff in Bennett sought to suppress evidence resulting from what he challenged as an

illegal arrest by a Sheriff's Deputy during the Bar None inspection of the bar plaintiff was

patronizing.  Id.  The Pennsylvania Superior Court held that since the deputy was acting under his

authority to make warrantless arrests for breaches of peace occurring in their presence, the deputy's

actions were permissible.  Id. at 476.  The Superior Court distinguished Black explaining that while

Black held that the Liquor Code does not furnish the authority for an officer to conduct a warrantless

search, Black did not prohibit warrantless arrests for breaches of peace occurring in their presence.

Id.

---

issued . . .

9

The present matter can be distinguished from <u>Bennett</u> in several respects. First, the Bar None Program detailed in <u>Bennett</u> outlined a multi-agency initiative spearheaded by the BCLE with the assistance of law enforcement. Law enforcement, in <u>Bennett</u>, then proceeded to undertake its traditional role of keeping the peace and monitoring the premises for underage drinkers and persons with outstanding warrants. In the present matter, Defendants entered Plaintiffs' property without the express of authority of LCE. Defendants indeed adopted responsibilities with respect to the warrantless seizure of the bar, a duty that in <u>Bennett</u> was reserved for the LCE.

As already explained, in order for the warrantless seizure conducted by Defendants in this matter to clear the reasonableness requirement, the seizure must fall within an exception. Defendants maintain their argument that their conduct falls within the closely regulated industries exception and can be validly placed within that exception because their actions were conducted pursuant to the enforcement of a regulatory scheme. The Circuit Court held that if the PLCB carried out the searches or the searches were conducted at the direction of the PLCB, "the searches certainly would have been valid under the closely regulated industry exception." <u>Watson v. Abington</u>, No. 05-4133 at 15 (3d. Cir. March 5, 2007). However, Defendants are now asserting that they were acting "not under the authority granted to the PLCB under the Liquor Code" but "within their authority under state law" namely the Pennsylvania Crimes Code. Since the Defendant now asserts that the searches were not conducted at the direction of the PLCB there can be no assumption that the searches were valid. The Court must therefore determine whether authority under Pennsylvania Crimes Code the sweeps were "made pursuant to and in enforcement of the regulatory scheme." In conducting this inquiry, the Court must determine "whether the state actually authorized officers to

10

search[3] the business without a warrant." Watson v. Abington, No. 05-4133 at 16 (3d. Cir. March 5, 2007).

Defendant offers no provision of the Pennsylvania Crimes Code which authorizes the officers to search or seize Plaintiffs' property.[4] Defendants urge this Court to hold that since, pursuant to 42 Pa. C.S. §8952 and 18 Pa. C.S. §6308, officers are authorized to enforce underage drinking laws, it reasonable for them to enter a business and seize it. The Court declines to accept that reasoning. No provision of the Philadelphia Crimes Code authorizes warrantless searches or seizures. Defendant concedes it was not acting under the authority of the PLCB and has not offered, nor can

---

[3] This Court's determination that Defendants' conduct constituted a seizure does not change this inquiry.

[4] For instance, compare Section 2-211 of Pennsylvania's Liquor Code, which provides in relevant part:

> (a) There is created within the Pennsylvania State Police a Bureau of Liquor Enforcement which shall be responsible for enforcing this act and any regulations thereto. Officers and investigators assigned to the bureau shall have the power and their duty shall be:

>> (1) To investigate whenever there are reasonable grounds to believe liquor, alcohol, or malt or brewed beverages are being sold on premises not licensed under the provisions of this act . . .
>> . . .

>> (3) Upon reasonable and probable cause, *to search for and to seize*, without or process, except private homes, any liquor, alcohol or malt brewed beverages unlawfully possessed, manufactured, sold, imported or transported . . . . Such liquor, alcohol, malt or brewed beverages, stills, equipment, materials, utensils, vehicles, boats vessels, animals or aircraft so seized shall be disposed of as hereinafter provided.

>> (4) To investigate and issue citations for any violations of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages or any regulations of the board adopted pursuant to such laws or any regulations of the board adopted pursuant to such laws or any violation of any laws of this Commonwealth or of the Federal Government relating to the payment of taxes on liquor, alcohol or malt or brewed beverages by any licensee, his officers, servants, agents or employees.

47 Pa. Cons. State. Ann § 2-211. (emphasis added).

11

this Court cannot identify, any regulatory scheme that would permit Defendants actions. Plaintiffs' motion is therefore granted on this issue.

**C.**   **Heck v. Humphrey Does Not Apply to the Facts of the Present Matter**

The Court briefly turns its attention to Defendants' attempt to apply the holding of Heck v. Humphrey, 512 U.S. 477 (1994) to the instant case. Defendant misapplies the holding of Heck. The Heck Court addressed the plaintiff's ability to recover for damages for an allegedly unconstitutional conviction or imprisonment. Heck v. Humphrey, 512 U.S. 477. The Supreme Court of the United States held that in order for a § 1983 plaintiff to recover damages for harm "whose unlawfulness would render a conviction invalid, [the] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a State Tribunal, or called into question by a Federal Court's issuance of a Writ of Habeas Corpus . . . ." Id.

Plaintiff was not cited for any offense nor does he seek to recover damages for a conviction or arrest. Likewise, Plaintiff does not seek to recover for damages for the conviction or arrest of any patron of the Scoreboard nor would he have standing to assert such a claim. The holding of Heck does not apply to this case.

**D.**   **Plaintiffs' Monell Claim[5]**

Plaintiff seeks summary judgment on its claim that both Defendants Abington Township and Chief William Kelly are liable under Section 1983 for deprivation of Plaintiffs Fourth Amendment rights. Plaintiff states that Chief Kelly directed his officers to violate Plaintiffs' Fourth Amendment

---

[5] Defendants argue that Plaintiffs' Monell claims remain dismissed pursuant to this Courts initial dismissal Plaintiffs' Fourth Amendment claims. Plaintiff correctly asserts that in vacating this Court's dismissal of the Fourth Amendment claims, Plaintiffs' Monell claim, as it relates to the alleged Fourth Amendment violations, was also reinstated.

rights.  According to Plaintiff, Abington Township is therefore responsible to Plaintiffs.  Defendant

retorts that Chief Kelly did not participate in the sweeps and therefore cannot be held liable under

§ 1983.

A municipality may be held vicariously liable for the unconstitutional actions of its agents

when the agent's conduct was the result of a "municipal policy" or "well-established custom."

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  A municipal policy is a "statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436

U.S. at 690.  A custom is a "persistent and widespread" practice of government action that is "so

permanent and well settled as to constitute a custom or usage with the force of law."  Id. at 691.  A

municipality may not be held liable under § 1983 solely on the basis of the existence of an employee-

employer relationship with a tortfeasor.  Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403

(1997).  Municipalities can only be held liable if action pursuant to official municipal policy caused

a constitutional tort.  Monell, 436 U.S. at 691.  Further, a municipality can only be liable for a

constitutional deprivation if there is a direct causal link between a policy or custom and the alleged

constitutional deprivation.  Brown v. Muhlenberg Twp., 269 F.3d 205, 214-215 (3d Cir. 2001)

(quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Here, Plaintiffs implicitly attempt to assert that since Chief Kelly was present at the sweeps,

as evidenced by his testimony, and directed the actions of the officers present, his actions amount

to a policy that was the proximate cause of a Fourth Amendment violation.  This argument bears no

merit.  Plaintiffs have offered no evidence to prove that the actions of the police reflect a well-

established custom or municipal policy.  Relying on Chief Kelly's deposition testimony, Plaintiffs

assert that as the top ranking commander of the Abington Township Police, he was the decision-

13

maker and directed his officers to violate Plaintiffs Fourth Amendment rights.   Chief Kelly's testimony, however, merely establishes that he was a "decision-maker."   Plaintiffs have not offered any evidence that the police department or the Township officially or even implicitly adopted warrantless searches and seizures as a well-settled practice.   Because the Plaintiff cannot establish that the Defendants had a policy of warrantless searches or seizures, Defendants' Motion for Summary Judgment on Plaintiffs' Monell claims is granted and Plaintiffs' motion on this issue is denied.

**E.      Qualified Immunity**

Defendants contend that summary judgment is proper based on the doctrine of qualified immunity.   An official is entitled to qualified immunity in his individual capacity under § 1983 if a reasonable official would have believed that his actions were proper under existing law.   Anderson v. Creighton, 483 U.S. 635, 640 (1987).   Qualified immunity should be denied only if, in light of pre-existing law, the unlawfulness of an action should have been apparent.   Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).   Thus, the qualified immunity defense provides "ample protection to all but the plainly incompetent or those who knowingly violate the law."   Malley v. Briggs, 475 U.S. 335, 341 (1986).   This Court must determine whether Defendants' conduct was "objectively reasonable" given the clearly established state of the law.   Curley v. Klem, 298 F.3d 271, 278-79 (3d Cir. 2002).

In determining whether an official is entitled to qualified immunity, "we [must] begin by considering the threshold question of whether the alleged facts, viewed in the light most favorable to [the plaintiff], show that [the official's] conduct violated a constitutional right."   Curley, 298 F.3d at 279.   The "reasonableness inquiry is an objective one."   Id.  (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).   In conducting this analysis, the Court "must judge 'from the perspective of a

14

reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" <u>Id.</u> (quoting <u>Graham</u>, 490 U.S. at 396). Qualified immunity is not appropriate where it is found that the officer "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." <u>Wood v. Strickland</u>, 420 U.S. 308, 322 (1975), quoted in <u>Forbes v. Twp. of Lower Merion</u>, 313 F.3d 144, 148 (3d Cir. 2002). However, "[i]f an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful." <u>Forbes</u>, 313 F.3d at 148.

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court enumerated the two-part inquiry a court must make in order to determine whether a state official is entitled to qualified immunity: 1) the must determine whether the facts alleged show that the officer's conduct violated a constitutional right; and 2) if a violation could be made out on a favorable view of the parties' submissions, the Court must also ask whether the right was a clearly established right. <u>Id.</u> at 201.

Defendants' motion for summary judgment on this issue of qualified immunity will be granted. Indeed, Plaintiff has alleged a constitutional violation. However, this Court is satisfied that, at the time of their actions, Defendants reasonably believed that their conduct was lawful. This is true even though this Court has held that Defendants actions were, in fact, unlawful. <u>Forbes</u>, 313 F.3d at 148. At the time the sweeps, the officers believed that they were operating with the sanction of the PLCB and that their actions were lawful pursuant to that sanction. Plaintiff does not offer a basis for this Court to hold that the officers knowingly violated the law. The individual officers are therefore entitled to qualified immunity.

15

## <u>CONCLUSION</u>

Since Defendants acted without a warrant and constituted a meaningful inference with Plaintiffs' property rights and Defendants conduct does not fall within any exceptions to the warrant requirement, this Court will grant in part Plaintiffs' Motion for Summary Judgment.

However, the Abington Township may not be held liable for the actions of law enforcement since Plaintiff has failed to prove that the officers' conduct was the result of a municipal policy or well established custom.   Further the individual Defendants are entitled to qualified immunity.  Thus, Defendants' Motion for Summary Judgment is granted in part.

———

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTONIO D. WATSON, ET AL.,** | │ | |
| **Plaintiffs,** | │ | **CIVIL ACTION** |
| | │ | **NO. 01-5501** |
| **v.** | │ | |
| | │ | |
| **ABINGTON TOWNSHIP, ET AL.,** | │ | |
| **Defendant.** | │_____ | |

**O R D E R**

    **AND NOW**, this _____ day of July, 2008, upon consideration of the parties' cross motions for summary judgment (Docs. 73-76), **IT IS HEREBY ORDERED and DECREED** that the parties motions are **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    Plaintiffs' motion is **GRANTED** on its Fourth Amendment claim against the Abington Township; and

2.    Plaintiffs' motion is **DENIED** as to all other Defendants; and

3.    Defendants' motion is **GRANTED** as it pertains to Plaintiffs' claims pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).  Plaintiffs' <u>Monell</u> Claims are **DISMISSED WITH PREJUDICE**; and

4.    Defendants' Motion is **GRANTED** as to the individual Defendants.  The individual Defendants are granted qualified immunity.

5.    Defendants' motion is **DENIED** as to all other claims.

    Plaintiff has asserted a valid Fourth Amendment claim, however, the Court has found that the Defendants cannot be held liable for the violation.  Therefore, **JUDGMENT IS ENTERED** in favor of Defendants and against Plaintiffs.

**BY THE COURT**:

/s/ Petrese B. Tucker
_____
**Hon. Petrese B. Tucker, U.S.D.J.**

17